**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEVIN M. LOVECCHIO,

    Plaintiff,

    v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

    Defendant.

Civil Action No. 16-2374 (CKK)

**MEMORANDUM OPINION AND ORDER**
(July 30, 2018)

In the parties' [30] Joint Status Report on Discovery Plan, Defendant discussed certain efforts to ascertain the relevance of thirty-one of Plaintiff's treating medical providers. That number has since increased to thirty-five, and may swell further as discovery continues.[1] Joint Status Report on Discovery Plan, ECF No. 36, at 7 & n.2. Rather than depose each provider—which would exhaust and exceed the Court's current limit of ten fact witnesses, assuming relatively few will be designated as experts—Defendant sought to conduct *ex parte* interviews, to which Plaintiff objected.

The Court held a teleconference on the record with the parties on June 12, 2018, in order to address this and other discovery issues. With the Court's permission, the parties submitted further briefing "regarding the legal basis for prohibiting Defendant from conducting *ex parte* interviews of [Plaintiff's] medical providers subject to an appropriate protective order." Min.

---

[1] Defendant also seeks to depose ten or eleven (non-medical) fact witnesses in addition to the medical providers. Joint Status Report on Discovery Plan, ECF No. 36, at 7-9 (demonstrating slight discrepancy in proposed number of fact witnesses). Note that the Court refers to pages of the parties' [36] Joint Status Report by their ECF page numbers in the absence of other pagination.

Order of June 13, 2018. Upon consideration of the briefing,[2] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Defendant's request to conduct *ex parte* interviews of Plaintiff's treating medical providers, subject to the Protective Order that this Court shall issue.

The issue is somewhat more nuanced than the parties' briefing elucidates. There is no dispute that informal interviews can be an appropriate means of reducing the number of depositions, particularly where many witnesses may be involved. The parties effectively dispute whether Defendant's interviews must include Plaintiff's counsel or Plaintiff himself.

The District of Columbia Court of Appeals has found that *ex parte* interviews can be an acceptable way of obtaining certain information from treating medical providers. *See Street v. Hedgepath*, 607 A.2d 1238, 1245-48 (D.C. 1992). By filing a lawsuit concerning his or her medical conditions, a plaintiff puts them in issue and thereby waives the statutory physician-patient privilege as to "medical information relevant to the . . . claim[s]." *Street*, 607 A.2d at 1246, 1248 (citing D.C. Code § 14-307).

Privacy protections available under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") leave this precedent undisturbed. As Plaintiff concedes, federal regulations implementing HIPAA expressly provide for court-authorized disclosure of protected medical information within the scope of that authorization:

---

[2] The Court's consideration has focused on the following pleadings:

- Joint Status Report on Discovery Plan, ECF No. 30;
- Pl.'s Mem. Regarding Ex Parte Contacts with Medical Providers, ECF No. 32 ("Pl.'s Mem.");
- Washington Metropolitan Area Transit Authority's Resp. to Pl.'s Mem. Regarding *Ex Parte* Contacts with Medical Providers, ECF No. 34 ("Def.'s Opp'n");
- Pl.'s Reply Regarding *Ex Parte* Contacts with Medical Providers, ECF No. 35 ("Pl.'s Reply"); and
- Joint Status Report on Discovery Plan, ECF No. 36.

> 1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order . . . .

45 C.F.R. § 164.512(e)(1)(i); *see* Pl.'s Reply at 1-2. This Court is unaware of any controlling authority in this jurisdiction since HIPAA, as amended, that prohibits *ex parte* interviews of medical providers. Often lower courts considering whether to permit *ex parte* interviews continue to cite *Street* as the law in the District of Columbia. *See, e.g.*, *Leonard v. Wash. Hosp. Ctr. Corp.*, Case No. 2014 CA 3734 B, 2014 D.C. Super. LEXIS 21, at *2 (D.C. Super. Ct. Sept. 9, 2014); Order at 1-2, *Corley v. Thomas*, Case No. 2012 CA 8261 M (D.C. Super. Ct. Jan. 8, 2014). The Court finds that no authority prohibits Plaintiff's medical providers from disclosing Plaintiff's protected health information during *ex parte* interviews *if* this Court permits Defendant to conduct such interviews and issues a protective order delineating the scope of such disclosure.

The Court must now decide whether to permit *ex parte* interviews in this case. As Plaintiff observes, that is not a foregone conclusion. *See* Reply at 1-2. The Court is unaware of any case law or HIPAA provision establishing that Defendant is *entitled* to conduct *ex parte* interviews. Many of the courts in this jurisdiction that have permitted or denied them have issued orders completely devoid of reasoning, or containing only boilerplate references, for example, to *Street* and HIPAA. *See, e.g.*, Order at 1, *Perkins v. Lucy Webb Hayes Nat'l Training Sch. for Deaconesses and Missionaries*, Case No. 2008 CA 006416 M (D.C. Super. Ct. July 23, 2009) (permitting *ex parte* interviews on the basis of *Street* and HIPAA). Those courts that furnish more extensive reasoning for or against *ex parte* interviews have articulated a variety of standards. *E.g.*, *Mbony v. Wash. Hosp. Ctr.*, Case No. 13 CA 1769, 2014 D.C. Super. LEXIS 11, at *2 (granting request for *ex parte* interviews based on the Court's "discretion"); Min. Order, *Bigelow v. Wash.*

*Hosp. Ctr.*, No. 10-cv-1471 (D.D.C. Jan. 17, 2012) (citing Mem. Op., *Jeffares v. Kheiri*, Civil No. L-07-1923 (D.Md. Nov. 19, 2008), ECF No. 23 ("[D]efendants have failed to demonstrate *good cause* for why traditional discovery methods are unworkable." (emphasis added))); *see also Lynch v. SSC Glen Burnie Operating Co., LLC*, Civil No. JKB-17-1328, 2017 WL 6508980, at *3 (D.Md. Dec. 20, 2017) (indicating that movant "must demonstrate *some* reason that ordinary discovery procedures are not sufficient"). *Street*, the one controlling authority—albeit pre-HIPAA—does not expressly articulate a standard. The "good cause" standard for a discovery protective order under Federal Rule of Civil Procedure 26(c) may be most analogous to this circumstance. *See also* Pl.'s Reply at 2 (urging application of "good cause" standard).

Regardless of the standard's labeling, the Court expects Defendant to articulate sufficient reason for the Court to authorize *ex parte* interviews of Plaintiff's treating medical providers. Based on Defendant's arguments and the parties' briefing, the Court finds ample reason to grant such authorization, subject to an appropriate Protective Order.

First, Plaintiff has been treated by a very large number of medical providers who evidently have some conceivable connection to this case. Defendant's admission of negligence allows Defendant to focus its further discovery on causation and damages associated with Plaintiff's injuries. *See* Joint Status Report on Discovery Plan, ECF No. 36, at 4. The Court agrees with Defendant that informal interviews—whether or not *ex parte*—are much more efficient and cost-effective (for both parties) than depositions for distinguishing which of the thirty-five listed providers (and perhaps more) would provide testimony relevant to disputed issues in this case. *See* Def.'s Opp'n at 9-10 (citing, e.g., Order at 5, *Maybin v. George Washington Univ.*, Case No. 03ca583 (D.C. Super. Ct. Sept. 15, 2004)). Moreover, courts in this jurisdiction have permitted *ex parte* interviews even where the movant sought to interview far fewer medical providers. *See,*

*e.g.*, Order at 1, *Corley*, Case No. 2012 CA 8261 M (permitting *ex parte* interview of three treating providers). The efficiency gains of *ex parte* interviews in this case are much more substantial.

Specific to the *ex parte* aspect, Defendant expresses fears that Plaintiff's counsel would "interfere" with interviews at which they are present, "intimidate[ ]" the medical providers, and "have access to [Defendant's counsel's] mental thoughts and opinions." Def.'s Opp'n at 5-6. While fears of intimidation, *per se*, seem little more than speculation, Plaintiff's briefing does suggest that he contemplates an active role at such interviews, akin to an informal deposition in which Plaintiff's counsel could raise objections. *See* Pl.'s Reply at 3 (indicating that the presence of Plaintiff or his counsel "would . . . ensure that only relevant information is disclosed"). But these interviews will not be on the record; consequently, there is no reason for Plaintiff's counsel to feel the need to preserve objections. Such objections can be raised if a given medical provider is deposed or, at the latest, takes the stand at trial.

The Court finds that Defendant's desire to test its legal theories through *ex parte* interviews is a legitimate reason for permitting that manner of proceeding. Defendant is seeking access to these providers that is equal to that enjoyed by Plaintiff himself. Def.'s Opp'n at 5-6. "As a general proposition, . . . no party to litigation has anything resembling a proprietary right to any witness's evidence." *Street*, 607 A.2d at 1247 (quoting *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 127 (D.D.C. 1983)) (internal quotation marks omitted); *see also Gregory v. United States*, 369 F.2d 185, 188 (D.C. Cir. 1966) ("Witnesses . . . are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them."). Plaintiff already may speak whenever he wishes to any of his treating medical providers. The fact that he has put his medical condition at issue in this case is a good reason, under *Street*, for Defendant too to speak to those providers to determine who is relevant to further proceedings.

As it is now, Plaintiff and his counsel can use any discussions they may have with his medical providers to test their own legal theories, while Defendant would be unable to do so with equal candor if the Court were to require the presence of Plaintiff's counsel at these interviews.

The Court finds that *ex parte* interviews of Plaintiff's many medical providers would facilitate the efficient resolution of this case. Defendant may conduct informal interviews, off the record, for the purpose of narrowing the list of Plaintiff's medical providers whom Defendant will seek to depose, and/or the issues which any depositions will cover. Each medical provider whom Defendant wants to interview must be provided a copy of this Memorandum Opinion and Order, as well as the accompanying Protective Order.[3] These copies must be given to the medical providers sufficiently in advance of any scheduled interviews to permit the providers time to review them and consult with their own counsel, should they choose to do so. The Protective Order provides, *inter alia*, that the medical providers may choose whether to consent to an interview and whether to have their own counsel and/or Plaintiff or his counsel present during any such interview. That Protective Order also establishes that any interview by Defendant shall include only one attorney representing Defendant, such that there is no other witness to the conversation other than the questioning attorney and the medical provider. If the medical provider's own counsel and/or Plaintiff or his counsel are present, then this restriction shall not apply.

---

[3] Note that 45 C.F.R. § 164.512(e)(1)(v) defines the "qualified protective order" applicable to disclosures in litigation *other than* by court order. While the Court's Protective Order is not governed by this definition, the Protective Order proposed by Defendant and substantially adopted by this Court incorporates similar protections. The Court's Protective Order omits the references to "Qualified" Protective Order that Defendant has proposed. The Protective Order also reflects other adjustments consistent with this Memorandum Opinion and Order.

The Court expects the parties to adhere to the deadlines set forth in the Court's [29] Amendment to Scheduling and Procedures Order, including the July 30, 2018, deadline for Proponent's Rule 26(a)(2)(B) & (C) disclosures. The Court anticipates that Plaintiff's identification of experts will further facilitate Defendant's efforts to narrow the list of treating medical providers who are relevant to disputed issues in this case.

***

For the foregoing reasons, the Court **GRANTS** Defendant's request to conduct *ex parte* interviews of Plaintiff's treating medical providers, subject to the Protective Order that Defendant has proposed and this Court shall adopt in substantial part.

By **AUGUST 29, 2018**, the parties shall file a further Joint Status Report on Discovery Plan that includes their plan for ensuring the completion of discovery by the discovery deadline of October 22, 2018.

The Protective Order discussed above accompanies this Memorandum Opinion and Order.

**SO ORDERED.**

Dated: July 30, 2018

                                          /s/
                                   COLLEEN KOLLAR-KOTELLY
                                   United States District Judge